

FILED

AUG 0 1 2022

MAB

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

**United States District Court, Eastern District of Delaware,
Republic of Delaware**

Julian Sebastian Chavez
*Plaintiff*

*v.*

Andrew M. Partyka, a man

STATE OF DELAWARE, a corporation

*Defendant(s)*

*Including but not limited to these named
Persons and corporations others to be
Named later. Plaintiff reserves the right to add
Additional defendants as the case progresses.*

CASE #   **22 - 1 0 2 4**

ACTION FOR TRESPASS:
CLAIM FOR DEPRIVATION OF RIGHTS
UNDER COLOUR OF AUTHORITY

42 USC § 1983 FIRST, FOURTH FIFTH,
FOURTEENTH AMENDMENTS

COMMON LAW TORT CLAIMS

**TRIAL BY JURY DEMANDED**

## ACTION OF TRESPASS:

## DECLARATION:

**Venue:**

Venue is proper in the DISTRICT OF DELAWARE. The named Defendant, the STATE OF

DELAWARE and the affiliated quasi-governments are located geographically within the state of

Delaware. A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred

in Georgetown, Delaware. 28 U.S.C. §1391(a)(2). Defendants transacted their affairs in

Georgetown, Delaware. 18 U.S.C. §1965(a). Georgetown is located within the territory known as

Delaware.

**Jurisdiction:**

This is an action for deprivation of rights, conspiracy to deprive rights, by those operating under the colour of authority arising under but not limited to 42 U.S.C. § 1983; 28 U.S.C. §§ 2201–02, and the Amendments I, IV, V, VIII & XIV to the Constitution for the United States of America. This Court has jurisdiction pursuant to Article III sec. 2 of the constitution for the United States; 28 U.S.C. § 1331 applies.

Diversity Jurisdiction arises pursuant to Article III sec. 2 of the constitution for the United States of America "between a State and Citizens of another State;… and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects" The STATE OF DELAWARE is being brought for redress by one of the People thereby creating prejudicial controversy between said People and the State as per the plain language of Article III sec. 2. Diversity occurs when the STATE and thereby the UNITED STATES is a party to the proceeding. The traditional justification for diversity jurisdiction is to open the federal courts' doors to those who might otherwise suffer from local prejudice against Parties; axiomatic prejudice exists within the STATE courts when the STATE is a Principal Respondent to the process. 28 USC § 1332 applies "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution." *Cohens v. Virginia,* 19 U.S. 264, 6 Wheat. 265, 5 L.Ed. 257 (1821).

**Commencement, for all actions:**

COMES NOW Julian Sebastian Chavez, who is at all times mentioned in the following declarations and actions at law, one of the unfranchised People, an American, having come of full age, having been found to be living, competent to give the testimony stated herein, (hereinafter "Plaintiff") and in this court of record, (hereinafter, "Superior Court") comes upon an action of trespass against Andrew M. Partyka, a man, THE STATE OF DELAWARE, a corporation and

others to be possibly named later (hereinafter "Defendant(s)") based off of acts done by Defendants under colour of law and authority upon Plaintiff within their roles with the quasi-governmental corporation but in contravention to law and constitutional limitation; and calls upon them to answer Plaintiff in these said actions in the Superior Court to wit:

**Qualified Immunity:**

Defendants have forfeited any semblance of qualified immunity both by acts in excess of law, statute and constitutional limitation and by standing as agents of a corporate entity. Plaintiff was physically attacked by Defendant Partyka under the colour of authority where multiple public servants within the STATE OF DELAWARE department of human services retaliated against Plaintiff's peaceful assertion of free press. Plaintiff was attacked for existing in a public vicinity as retaliation for speech and free press. The People embody the right to liberty and free from illegal and/or unlawful assault by our public servants, Plaintiff's right to free press is protected and Plaintiff was not involved in any criminal act to warrant the attack and assault on Plaintiff's person. The retaliatory call to a clearly unhinged and dangerous law enforcement public servant and the subsequent assault and detainment in-and-of itself stripped away any immunity as acts outside the scope of authority of Defendants and an act in excess of constitutional limitation. The State cannot offer qualified immunity to public servants acting outside the limitations of law, statute, constitution and authority. Even the most popular of statutes regarding immunity are void based on the Supremacy Clause and the protected rights of the People to due process and redress.

Qualified Immunity and the Sovereign States Doctrine are inadmissible because the issues herein involve commerce (all crimes are commercial 27 CFR 72.11) by agents of a commercial agency and the Clearfield Doctrine, a common law foundational provision of the rule of law holds that: "When the United States [Government, agents, subsidiaries etc.] enters into commercial business

it abandons [or waives] its sovereign capacity and is to be treated like any other…" as per *Bank of the US v Planters Bank of Georgia* 9 Wheat 9024 22 US 904, 907-908 6 L. Ed. 244 (1924). Defendants are employees of a commercial corporate entity in the guise of a governmental body, proceeding in excess of constitutional limitation in bad behavior under contract oath.

Defendants are tortfeasors and hold no immunity. This matter brings forth intentional tort. FEDERAL TORT LAW: Not even Judges can invoke judicial immunity for acts that violate litigant's civil rights, axiomatic no law enforcement immunity can be invoked for tort; Robert Craig Waters. Tort & Insurance law journal Spr. 1986 21 n3 p509-516. The State cannot offer qualified immunity to those acting outside the limitations of law, statute, constitution and authority.

The government immunity clause only applies to government actors when they are performing their actions of their office defined by their office in good faith and good behavior within the limitations of law and constitution and that the UNITED STATES SUPREME COURT has made a ruling regarding public officials being held liable for actions done or failure to perform required actions, in the case of *MILLBROOK v. UNITED STATES* (477 Fed. Appx. 4). See also: *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971); *Murdock v. Penn.*, 319 U.S 105; *Owen v. City of Independence*, 100 S Ct. 1398; *Maine v. Thiboutot*, 100 S. Ct. 2502; and *Hafer v. Melo*, 502 U.S. 21.

## Short and Plain Statement of Claim

Plaintiff is entitled relief wherein Plaintiff, one of the unfranchised People, was viciously accosted by an employee of the State who was acting in excess of law and constitution by illegal and unlawful detention and assault as retaliation for Plaintiff's protected right to freedom of

press, suppression of Plaintiff's amendment I, IV, V, VIII, XIV protected rights, unlawful detention, presumption of guilt and what can only be described as an insane assault on Plaintiff's person. Multiple Agents within the Department of Human Services for THE STATE OF DELAWARE, clearly unlearned on the limitations of constitution regarding press, without probable cause and with no reasonable articulatable suspicion of a crime then created a dangerous situation, placed Plaintiff's life at risk, by calling law enforcement, Defendant Partyka, who arrived and, with no articulation of crime, escalated the situation by unilaterally deciding filming in public is a crime and unlawfully detained and viciously assaulted Plaintiff with an unnecessary level of aggression. Defendants colluded, suppressed and trespassed upon Plaintiff's substantive rights and the law guarantees redress, remedy, cure and maintenance.

## INTRODUCTION

This is a matter brought forth pursuant to Defendant's deprivation of rights and conspiracy to deprive rights under the colour of authority where Plaintiff was assaulted as a retaliation for Plaintiff asserting rights protected under Amendments I, then deprived of Amendment IV, V, VIII and XIV protections where Defendant's attempted to create fictitious crimes by clear incompetence of law and constitution with intention to suppress and cool Plaintiff's assertion of God-given right:

The primary cause of this action is deprivation of rights while under the colour of authority and conspiracy to deprive rights as per 42 U.S.C. §§ 1983.

The predicate acts alleged here cluster around I, IV, V, VIII and XIV amendment prohibited acts based upon retaliation against first amendment protected rights, wherein Plaintiff was unlawfully

assaulted, restrained of liberty and detained by those sworn to uphold the limitations of constitution under contract oath under the colour of authority in excess of probable cause. Defendants acted in excess of Procedure, law and Plaintiff's substantive rights to liberty, freedom of press and freedom of movement while under the colour of authority but with no true authority.

**Short summation of the issue:**

On June 13, 2022, around 10:30 am EST Plaintiff, a private journalist who operates a news channel, was enjoying the protected right to film in public by entering into the STATE public building "Thurman Adams State Service Center" where Plaintiff, who was quiet and peaceful, met great hostility by the public servants therein. Plaintiff at no time entered any restricted area but was confronted by multiple employees who then called and falsely reported criminal suspicion and asserting that filming in public is illegal. The call was responded to by Defendant Partyka who, upon arriving on scene and making conclusion that Plaintiff was not a threat of violence and was unarmed, then voraciously attacked/assaulted Plaintiff, demanding identification, with a high level of hostility asserting that filming in public is a crime while Plaintiff non-violently retreated from the consistent assault. Plaintiff was forced to retreat under the clear threat of violence. Plaintiff was chased a distance before Trooper Evans, a superior officer, de-escalated the situation, still claiming Plaintiff to be detained, but could not articulate any crime. Ultimately, Plaintiff was allowed to leave with no actual arrest.

## PARTIES

Julian Sebastian Chavez is one of the people as recognized in the warrant that is the preamble to the Constitution for the United States of America, an American, having come of full age, having been found to be living who is a private journalist and runs a social media news channel.

Andrew M. Partyka, a man, is a public servant law enforcement employee of the commercial THE STATE OF DELAWARE, a for profit privately held corporation operating under the guise of a governmental organization.

## **FACTS OF THE CASE**

1. Plaintiff now states the following facts regarding the events of June 13 in the year Two Thousand and Twenty-Two and after, and declares the same in these causes of action to the best of his knowledge and recollection to wit:

2. At all times mentioned herein Plaintiff was and is one of the people of Delaware, and a free American.

3. At all times mentioned herein Plaintiff is and was domiciled on private land, County of Sussex, republic of Delaware.

4. At all times mentioned herein Plaintiff has been found to be living and has come of full age.

5. At all times mentioned herein Plaintiff was and is a free man.

6. Plaintiff operates a news channel on social media known as Julian Chavez Trucker Fit.

7. On June 13, 2022, at approximately 10:30am EST, Plaintiff entered upon the Thurman Adams State Service Center after filming other areas of interest including the Department of Motor Vehicles.

8. Plaintiff entered into the building and began filming literature, signs, and other publicly accessible areas but never entering into any restricted areas and made sure not to disturb any of the employees with unnecessary noise.

9. About five minutes after entering and filming Plaintiff was approached by a woman who demanded to know "what are you videoing for?"

10. Plaintiff replied "I'm just gathering some content for a story" to which said unidentified woman asked "what kind of story?"

11. Plaintiff stated the story was unpublished and that Plaintiff preferred not to divulge any information. Said woman then asked "who do you work for" to which Plaintiff responded "I'm an independent journalist."

12. Plaintiff then asked "what's your name and title please?" and, for the first time, panned the camera in the direction of said woman who scoffed and responded "nope, not gunna get it."

13. Plaintiff persisted calmly stating "isn't this a public building?" to which said woman affirmed "yup." Plaintiff asked if it was State funded and said woman again affirmed "yup."

14. Plaintiff then asked "Aren't you a public employee?" to which said woman responded "I sure am."

15. Plaintiff asked if said woman was not required to divulge that information and the said woman replied "not when I'm being recorded, I do not want to be recorded and I do not have to give you that information. The woman then entered a restricted area and Plaintiff proceeded to record the building, the literature and other items of possible public interest for about another twenty minutes with no issue and without creating any disturbance.

16. Plaintiff was then approached by two more employees, a man and a woman. The woman asked, "what are you doing?" to which Plaintiff replied again "just gathering some content for a story." The questions proceeded for a few minutes with Plaintiff again stating, "I am an independent journalist." Plaintiff was then noticed that the public servants had called security. Plaintiff calmly said "that's fine, I'm not doing anything wrong."

17. Plaintiff then panned to the man and asked "what is your name and title?" The man refused, the same woman from previously intervening demanding to know who Plaintiff was and again asserting that they were under no obligation to identify. Said woman stated that Plaintiff had to identify because "you're in my building." A back and forth proceeded for less than a minute before Plaintiff broke contact and proceeded to record the public areas quietly.

18. Plaintiff then exited the building to leave and, upon exiting the building, noticed that the man that had confronted Plaintiff had followed Plaintiff outside the building and, ironically, was recording Plaintiff. Plaintiff approached said public servant and again asked said to identify so that Plaintiff could do a public request of the mobile device said employee was utilizing to record Plaintiff. Said public servant continued to refuse to identify.

19. Plaintiff re-entered the building to ascertain the identity of the public servant who was recording Plaintiff. Upon entry the woman from previous stated "you have to answer my questions" but still refused to identify herself.

20. Plaintiff approached the help desk and asked the name of the man that was recording and was told his name was "Robert." The employees then began to laugh at Plaintiff.

21. A discussion ensued. Other employees claimed that it is against the law to record if they do not want to be recorded. Plaintiff pointed out that there were cameras in the building recording. Plaintiff was then noticed that the police had been called with the employees claiming that recording public employees in the course of their duties in a public facility is "illegal."

22. Plaintiff then exited the building and waited for the State police to arrive.

23. Defendant Partyka arrived and made contact with Plaintiff, approaching aggressively and getting very close to Plaintiff. Defendant Partyka asserted that Plaintiff was asked to leave, despite the fact that Plaintiff had not once been asked to leave the property. Defendant asserted that the property was public and Plaintiff agreed, stating that they could not force Plaintiff to leave without a reason.

24. Defendant Partyka then asked for an ID. Plaintiff stated "I don't have ID" and Defendant parroted "you don't have ID" then immediately grabbed Plaintiff who evaded.

25. Defendant Partyka began to aggressively pursue Plaintiff saying "you're under arrest."

26. Plaintiff asked "Under arrest for what?"

27. Defendant Partyka responded "I just asked you for your identification." Plaintiff asked "what law have I broken" while retreating in fear for Plaintiff's life. Plaintiff requested a supervisor and Defendant said "go ahead and call" while still aggressively pursuant Plaintiff.

28. Defendant Partyka then reached for his taser and again demanded identification.

29. Plaintiff agreed to vacate the premises but Defendant Partyka maintained pursuit stating he needed identification and threatening arrest.

30. Plaintiff stated on numerous occasions "I have not broken any laws." Defendant Partyka responded "you're videotaping people" to which Plaintiff said "that's not illegal." Defendant Partyka responded "it is illegal."

31. Defendant Partyka continued to attempt to force Identification, pursuing Plaintiff with hostility until Plaintiff approached Trooper Evans who had Defendant Partyka stand down.

32. Plaintiff noticed Evans that Plaintiff was in fear for Plaintiff's life. Evans de-escalated the situation. Plaintiff recounted to Evans the recent occurrences while the two employees from before witnessing with the man still videorecording on his cellular device.

33. Evans stated that they were called for somebody suspicious to which Plaintiff responded, "suspicious isn't illegal," Evans agreed.

34. Evans requested identification Plaintiff refused stating no crime was committed. Evans stated Plaintiff was detained. Plaintiff noticed Evans it was an unlawful detainment.

35. Plaintiff was then allowed to leave.

**Discussion:**

36. Plaintiff was engaged in a first amendment protected activity and was at all times in public, never entering into any restricted areas. Axiomatic, the First Amendment protects the publics "right of access about their public official's public activities" as per *Fields v City of Philadelphia*, 166 F. Supp 3d 528 at 359 (3rd Cir. 2017). The unprofessionalism demonstrated by the State Employees within the Thurman Adams State Service Center was unacceptable to say the least, however it became retaliation to and suppression of Amendment I to the constitution for the United States of America when said employees called down the wrath of the State through the State police which placed Plaintiff, a minority, at statistical risk of great bodily harm and possibly death which could have well occurred given the obscene and egregious actions of Defendant Partyka who demonstrated to have absolutely no understanding of constitutional limitations regarding amendment IV arrest and Amendment I free press. No State public servant seemed to support much less understand Plaintiff's right to film public employees in the course of their duties and despite multiple notices that Plaintiff was gathering content for a news story, proceeded to intervene in and impair Plaintiffs free press to the extent of creating a controversy where no controversy existed, or should have ever existed, and placing Plaintiff at risk of bodily harm by attempting to convert a constitutionally protected right into a criminal act. It is unconscionable that in the year 2022 where cameras are found just about everywhere that a group of public servants would be so

overtly undertrained in the first amendment rights of the People; this is a gross deficiency in training by THE STATE OF DELAWARE which holds ultimate liability for this incompetence and the retaliation against Plaintiff's right to free press.

37. While the actions of the Employees within the Thurman Adams State Service Center were unacceptable based on incompetence, the true danger lies in an unhinged and well-armed law enforcement public servant whose first instinct is to voraciously attack. Defendant Partyka demonstrated no self-control and with no crime asserted anywhere at any time, other than his assertion that filming in public was illegal, violently attacked and assaulted Plaintiff, attempting to arrest Plaintiff with no probable cause while fiercely attempting to force Plaintiff to identify without any reasonable articulated/articulatable suspicion of a crime.

### Claim One

**Acts in excess of amendment I: Retaliation for assertion of Amendment I Press, Suppression of rights by STATE public servants**

38. Plaintiff re-alleges Paragraphs 1 through 37 as if stated fully herein;

39. Amendment I to the constitution for the United States mandates prohibition on the government, or any agent therein, from impairing the freedom of press which includes video recording public servants in the course of their duties from public which have been well established as a protected right. In *Branzburg v. Hayes*, 408 U.S. 665 (1972), the Supreme Court noted that "without some protection for seeking out the news, freedom of the press could be eviscerated." *Id*. at 681. Plaintiff was in public, never entering into restricted areas, and was never boisterous, rude and/or confrontational. No issues existed until the State employees within Thurman Adams State Service Center created a commotion; Plaintiff was silent and not obstructing any employee in the course of their duty.

40. The employees within Thurman Adams State Service Center were visibly irritated by the presence of a video camera despite multiple security cameras filming every move they make all day every day. Said employees attempted to convert a constitutionally protected activity into a crime and called upon the State police to punish Plaintiff. This is clear false reporting as no crime was ever committed at any time and at no time had Plaintiff been asked by any employee to leave the property, though filming alone cannot be asserted as a reason for trespass one of the People from a public property. The act of making an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of speech and press rights as per *ACLU of Ill. v. Alvarez*, 679 F.3d 583,595 (7th Cir 2012). The Seventh Circuit went on to hold that:

> [a]udio and audiovisual recording are media of expression commonly used for the preservation and dissemination of information and ideas and thus are "included within the free speech and free press guaranty of the First and Fourteenth Amendments." Laws that restrict the use of expressive media have obvious effects on speech and press rights; the Supreme Court has "voiced particular concern with laws that foreclose an entire medium of expression."

> The act of making an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of speech and press rights as a corollary of the right to disseminate the resulting recording. The right to publish or broadcast an audio or audiovisual recording would be insecure, or largely ineffective, if the antecedent act of making the recording is wholly unprotected, as the State's Attorney insists. By way of a simple analogy, banning photography or notetaking at a public event would raise serious First Amendment concerns; a law of that sort

would obviously affect the right to publish the resulting 8 photograph or dissemi-

nate a report derived from the notes. The same is true of a ban on audio and audi-

ovisual recording.

*Id*. at 595-96 (internal citations omitted).

By intervening in Plaintiffs press activity said employees, by their own actions, became the

news story. Despite being noticed that Plaintiff was engaged in constitutionally protected

journalistic activities, the said Employees of the STATE proceeded to harass Plaintiff by at-

tempting to manufacture a crime and called the police as a means to suppress Plaintiff's as-

sertion of right, causing harm to Plaintiff and forcing Plaintiff into an adversarial situation

with Defendant Partyka which could have easily resulted in serious bodily harm if not death.

Retaliation for first amendment protected activities and a "loss of First Amendment free-

doms, for even minimal periods of time, unquestionably constitutes irreparable injury." *El-

rod v. Burns*, 427 U.S. 347, 373 (1976). By their actions in creating a fictitious allegations

of criminal acts with no understanding of the laws regarding free press and by invoking the

wrath of the police for a constitutionally protected activity by misapplication of statute, the

STATE Employees impaired Plaintiff's ability to continue with the enjoyment of the right to

press, causing harm to Plaintiff and impairing Plaintiff's first amendment protected right.

The fact that none of the multitude of employees within Thurman Adams State Service Cen-

ter acted in a manner constituent with constitution in the understanding of free press demon-

strates a gross lack of employee training within THE STATE OF DELAWARE which was

further evident by the assertions of Defendant Partyka.

**Claim Two**

**Acts in excess of amendment I: Retaliation for assertion of Amendment I Press, Sup-
pression of rights under the colour of authority**

41. Plaintiff re-alleges Paragraphs 1 through 40 as if stated fully herein;

42. Defendant Partyka aggressively attacked and assaulted Plaintiff, attempting to arrest Plaintiff while stating that video recording is illegal. By the manufacturing of a "crime" out of an action that is well known to be constitutionally protected, Defendant Partyka went well outside the bounds of law, constitution and basic common sense in an egregious and violent attempt to retaliate against and to suppress Plaintiffs right to free press. The physical attack by Defendant Partyka was extreme and based, in part, upon Defendant Partyka's specious assertion that video recording is a crime. How, in the year 2022, a law enforcement officer who is sworn to uphold the limitations of law and constitution, could ever make the assertion that video recording in public is a crime is simply unconscionable and is demonstrative of some immense failure within THE STATE OF DELAWARE to provide even the most basic constitutional training to its agents. Defendant Partyka retaliated against Plaintiffs right to free press by arrest as a means to chill Plaintiff's assertion of right thusly causing harm to Plaintiff by threat, threat *de armus*, as a means to suppress a first amendment protected right to which Plaintiff was clearly involved.

### Claim Three
### Acts in Excess of Amendment IV; Unlawful Seizure
### Assault

43. Plaintiff re-alleges Paragraphs 1 through 42 as if stated fully herein;

44. Defendants Partyka made an arrest of Plaintiff making the false claim that video recording in public is illegal. No probable cause exists as the claim and exercise of a Constitutional right cannot be converted into a crime *Miller v. U.S.* 230 F 2d 486, 489. Defendant Partyka

then aggressively attempted to seize Plaintiff within the meaning of the Fourth Amendment "by means of physical force or show of authority, his freedom of movement is restrained." (*United States v. Mendenhall*, 446 U,S 544, 553 (1980)). Plaintiff embodies the inalienable and unalienable right to be secure in his person and property. This court will take mandatory judicial notice of Amendment IV to the Constitution for the United States of America "The right of the people to be secure in their persons, houses, papers, and effects, against unrea-sonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *United States v. Cortez*, 449 U.S. 411 (1981), utilizing *Terry v. Ohio,* 392 U. S. 1, 392 U. S. 29 set forth the authority of an officer to stop and touch a suspect, but both make clear that the <u>reasonable</u> suspicion of a "crime" must be <u>articulated</u> before "going hands on" lest said action be an assault. Defendant Par-tyka could not and did not produce probable cause or any reasonable suspicion that Plaintiff had committed any crime but went on full attack regardless, grabbing Plaintiff and using force and threat *de armus*. Plaintiff was assaulted by Defendant Partyka as per Delaware Code Title 11 § 601(a)(1). Defendant Partyka physically attacked Plaintiff and went to the extent of reaching for his taser. Had Trooper Evans not shown up timely, Plaintiff could have been killed where no crime was ever articulated. Plaintiff was assaulted, illegally and unlawfully touched by Defendant Partyka, and has suffered duress, anxiety and stress.

### Claim Four
### Acts in excess of amendment IV;
### False Imprisonment

45. Plaintiff re-alleges Paragraphs 1 through 44 as if stated fully herein;

46. Defendant Partyka restrained Plaintiff of freedom of movement with no predicate act or crime to allow for such seizure based solely upon Plaintiff's assertion of free press. Plaintiff,

though evading the attacks of Defendant Partyka, was not free to leave. Defendant Partyka

seized Plaintiff by force but Plaintiff evaded. Defendant Partyka then forced Plaintiff to stay

in the location under threat *de armus*, actually reaching for his taser at one point in the en-

counter. Defendant Partyka then created fictitious charges as a means to restrain Plaintiff of

liberty. Defendants detained Plaintiff in excess of lawful and legal authority, thereby creat-

ing an unlawful detention, causing harm of false imprisonment. The manufacturing of a

crime that is outside the limitations of constitution does not rise to the level of probable

cause or even reasonable suspicion but instead demonstrates malfeasance, incompetence and

corruption within the law enforcement division of Delaware. The video evidence reveals

that Trooper Evans, though a ranking officer with a much cooler head that may have well

saved Plaintiff's life, still detained Plaintiff without articulation of any reasonable suspicion

of a crime. It seems that the State Police Force has no idea what constitutes a lawful detain-

ment. Plaintiff was harmed by false imprisonment.

### Claim Five
### Acts in excess of amendment IV; Retaliation for assertion of Amendment IV protected rights

47. Plaintiff re-alleges Paragraphs 1 through 46 as if stated fully herein;

48. Plaintiff embodies the inalienable and unalienable right to be secure in his person and prop-

erty. Pursuant to *Terry*, there is a reasonable threshold that must be met before detention and

the forfeiture of Amendment IV protections. Clearly, the assertion that filming is a crime is

not a reasonable reason to detain much less arrest. The Reasonable threshold is set to pre-

vent Law Enforcement from forcing identification when no articulatable crime can be as-

serted. Defendant Partyka assaulted Plaintiff based, in part, on Plaintiff's refusal to identify

when no reasonable assertion of any criminal act was articulated. Defendant Partyka vora-

ciously attacked and aggressively pursued Plaintiff in an attempt to force Plaintiff to produce papers where no crime existed. The video evidence reveals that almost immediately upon Plaintiff's statement of "I don't have ID" Defendant Partyka attacked, grabbing Plaintiff's arm and aggressively approaching Plaintiff. Defendant Partyka's incompetence in law does not bar claim, as such can never be utilized as an excuse to break the law or to proffer qualified immunity. *McNally v. United States*, 483 U.S. 350 (1987) makes unequivocally clear that that the Public Servant is fiduciary to the public and concealing information is a fraud. Defendants had a lawful duty to articulate to Plaintiff, one of the People, the <u>reasonable</u> cause and nature of the detention. No suspicion of any reasonable crime was articulated at any point throughout the encounter. Given that no law had truly been violated and Plaintiff is not required to produce papers on demand based on "no crime" and in failing to articulate any reason for the detention, pursuant to the doctrine of trespass *ab initio*, Defendant Partyka was at all times operating in excess of law and authority; therefore the force used upon plaintiff was assault by those acting under colour of government authority and was a retaliation for Plaintiff's assertion of Amendment IV protections to be secure in Plaintiff's papers. No articulable criminal action had been committed to allow for lawful detention *Florida v. Bostick*, 501 U.S. 429, 437 (1991). Defendant Partyka arrested Plaintiff based upon Plaintiff's free press and refusal to provide papers. The response by Defendant Partyka was excessive and dangerous. Defendant Partyka's assault on Plaintiff was spurred by Plaintiff's assertion of Amendment IV protections and Plaintiff was afraid for Plaintiff's life given the combination of aggression and Neanderthalic incompetence displayed by Defendant Partyka. Plaintiff suffered distress, anxiety and fear based on the retaliatory assault for Plaintiff refusing to forfeit papers.

**Claim Six**

**Tortuous Breach of Contract**

49. Plaintiff re-alleges Paragraphs 1 through 48 as if stated fully herein;

50. Defendant Partyka entered into a binding contractual agreement with the People to whom he serves as fiduciary. The acceptance of every public office implies an agreement on the part of the officer that he or she will execute its duties with diligence and fidelity as per *Nelson v. West Va. Pub. Employees Ins. Bd.*, 171 W. Va. 445, 300 SE2d 86, 34 ALR4th 438 [persuasive]. Said contract, known as an oath, makes the guarantee that Partyka will adhere to and support the limitations of constitution, which Defendant Partyka did not and is in breach thereof. The oath is a requirement to office as per Art. XIV Sec. 1 of the constitution for the State of Delaware. The warrant that is the preamble to the constitution for the United States of America makes a clear distinction between the People, the wellspring from which government authority flows, and the government fiduciaries and makes a mandate that the agents of the government will act within the limitations of the enumerated articles and amendments therein; Partyka did not stay within the amendments. Partyka is aware of the contract oath and, as a fiduciary trustee of the People, did so swear and/or affirm to stay within the limitations of law and constitution and to support the constitutions; Defendant Partyka did not stay within the limitations of law and/or constitution, acted in direct contravention thereof, and is thereby in breach of the binding covenant between Defendant and the People. Plaintiff, as one of the People, was harmed by the breach of the agreement and trust.

**Claim Ten**

**Intentional Infliction of Emotional Distress**

51. Plaintiff re-alleges Paragraphs 1 through 50 as if stated fully herein;

52. Defendants all acted well outside the scope of authority granted to any public servant. From the State employees within the Thurman Adams State Service Center calling down the

wrath of the State for the assertion of a right with the clear intention to cause distress to the egregious acts of terror committed by Defendant Partyka, at every step throughout this encounter Defendants went to great lengths to cause distress to Plaintiff. The fear of death by cop is real, police statistically murder over one-thousand people a year with higher statistics on minorities. The mere calling of the police is a violent act of aggression that could lead to death. Plaintiff was attacked by State employees for no crime and said attack was malicious and this was an intentional act of retaliation for assertion of right, both freedom of press and security in papers and person/privacy. Defendants had full intention of causing harm to Plaintiff and did so by manufacturing a false "crime." the attack persisted despite the fact that no statute, law, code ordinance or rule could be proffered to allow for arrest. Defendants knowingly caused Plaintiff anxiety, stress and fear as retaliation for Amendment I protected activity of free press.

**Conclusion:**

53. The record reveals that defendants, while under the colour of authority, used their positions with the State, commercial in nature, where they acted in clear and consistent abrogation to Plaintiff's substantive and natural rights well in excess of both statutory authority and in contravention to constitutional limitation with a clear ulterior motive. Defendants, with no probable cause of any crime, acted upon emotion and in retaliation to Plaintiffs' assertion of rights and plainly and clearly stated as such in video evidence. Defendants manufactured fictitious and inapplicable "crimes" as a means to suppress Plaintiff's assertion of free press and then assaulted Plaintiff. Defendants were not acting in good behavior or within constitutional limitation to hold any semblance of qualified immunity while abusing a position with the State for personal interest and intentionally causing irreparable harm to Plaintiff.

## **RELIEF REQUESTED**

*Wherefore,* Plaintiff requests judgment against all named Defendants and relief as follows:

54. That upon the findings in favor of Plaintiff that all the employees of THE STATE OF DEL-AWARE police department be required to undergo additional and extensive training on constitutional protections with emphasis on the right to film in public and fourth amendment protections twice a year for the next five years and that this be paid for by Defendant Partyka and not from public funds.

55. That upon the findings in favor of Plaintiff that THE STATE OF DELAWARE institute a training module/program/video for every current and future employee of THE STATE OF DELEWARE that educates said employees on the People's right to free press and the right to record employees in the course of their duties where the review of such is a requirement of employment.

56. That upon the findings in favor of Plaintiff that Defendants pay to Plaintiff all damages sustained by Plaintiff in consequence of Defendants' several predicate acts in excess of Plaintiffs inalienable and unalienable rights, for the humiliation and abuse of authority according to the best available proof, this shall include $53,000.00 From Defendant Partyka and $40,000.00 from Defendant THE STATE OF DELAWARE.

57. That upon the findings in favor of Plaintiff Defendant Partyka be terminated and barred from any future office within "law enforcement" within any municipal corporation within the United States.

58. That upon the findings in favor of Plaintiff, Defendants pay to Plaintiff his costs of the law-suit incurred herein including, but not limited to, all necessary research, all nonjudicial en-forcement and all reasonable counsel's fees, at a minimum of $350.00 per hour worked (Plaintiff's standard professional rate at start of this action).

59. That the court make an order that shall Defendant not cure the judgment debt within thirty (30) days from the date of judgment, the amount shall double (2x).

60. That this court make an order that shall Defendant retaliate in any way, the judgment debt be multiplied by five (5x) the original judgment debt.

61. That this shall be payable to Plaintiff in constitutional or lawful money redeemable in gold or silver coin pursuant to Art. 1 Sec. 10 of the Constitution for the United States of America.

62. For such other and further relief as this Court deems equitable and proper.

63. If necessary; Plaintiff demands for all issues to be decided by the Jury demanded;

64. If Defendants move to dismiss this action, Plaintiff demands that it be heard by the jury de-manded, and only be dismissed if the Jury considers it lacks merit.

## VERIFICATION

I, Julian Sebastian Chavez, *Sui Juris*, Plaintiff in the above entitled action, hereby verify under penalty of perjury, under the laws of the United States of America, without the "United States" (federal government), that the above statement of facts and laws is true and correct, according to the best of my current information, knowledge, and belief, so help me God, pursuant to 28 U.S.C. 1746(1). See the Supremacy Clause in the Constitution for the United States of America, as lawfully amended (hereinafter "U.S. Constitution") on this, July 26, 2022.

Julian Sebastian Chavez
One of the People of Delaware-Plaintiff
35550Jami Ave.
Laurel DE 19956

ReadyPost

U.S.M.S.
I-X-RAY

TO:

United States District Court
844 North King St. unit 18
Wilmington De. 19801

FILED
APR 0 1 2022
U.S. DISTRICT COURT
DISTRICT OF DELAWARE



FROM:
Julian Sebastian Chavez
35550 Jami Ave
Laurel De 19956



U.S. POSTAGE PAID
PBR 1ST RWT
LAUREL, DE
19956
JUL 30, 22
AMOUNT
1000
$6.64
19801
R2304E107521-12





CERTIFIED MAIL
PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

2022 0410 0000 7745 9875