IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JULIAN SEBASTIAN CHAVEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 22-1024 (MN) |
| | ) |
| ANDREW M. PARTYKA, et al., | ) |
| | ) |
| Defendants. | ) |

**<u>MEMORANDUM OPINION</u>**

Julian Sebastian Chavez, Laurel, DE – Pro Se Plaintiff.

Robert Michael Kleiner, Delaware Department of Justice, Wilmington, DE – Attorney for Defendants.

September 11, 2023
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Plaintiff Julian Sebastian Chavez, proceeding *pro se*, filed this 42 U.S.C. § 1983 civil rights action against Defendants the State of Delaware and Officer Andrew M. Partyka of the Delaware State Police. (D.I. 2). Defendants have moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (D.I. 12).

## I. BACKGROUND

Plaintiff's allegations, which are accepted as true at this stage of the proceedings, are as follows. Plaintiff utilizes social media to post content on a "news channel." On the morning of June 13, 2022, Plaintiff entered the Thurman Adams State Service Center in Georgetown, Delaware, and "began filming literature, signs, and other publicly accessible areas." (D.I. 2 ¶ 8).[1]

---

[1] Defendants submitted Plaintiff's video as an attachment to their motion to dismiss. (D.I. 15). The video, which was apparently downloaded from Plaintiff's social media site, is more than 37 minutes long. Defendants assert that the Court should consider the video because it is, effectively, a "document integral to or explicitly relied upon in the complaint." (D.I. 13 at 9) (quoting *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). As such, Defendants urge the Court to "adopt the version of events as depicted in the video" in instances where "Plaintiff's Complaint is blatantly contradicted by the video." (*Id.*). Perhaps tellingly, Defendants strictly rely upon summary judgment cases for the proposition that courts defer to video evidence over contradictory versions of facts presented by a non-moving party. (*Id.* (citing *Brown v. Smith*, No. 21-3127, 2022 WL 2383609, at *2 n.3 (3d Cir. July 1, 2022) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)))). This is not to say that courts never consider video evidence while adjudicating motions to dismiss. *See e.g.*, *McLaurin v. City of Erie*, No. 1:21-CV-00322-SPB-RAL, 2022 U.S. Dist. LEXIS 81448, at *11-13 (W.D. Pa. May 4, 2022) (report and recommendation considering video evidence on motion to dismiss and collecting Seventh Circuit case law in support); *Coles v. Carlini*, Civ. No. 10-6132 (JBS/AMD), 2012 WL 1079446, at *7 (D.N.J. Mar. 29, 2012). Such reliance, however, is certainly the exception to the general rule. *See, e.g.*, *Slippi-Mensah v. Mills*, No. 1:15-cv-07750-NLH-JS, 2016 WL 4820617, at *3-4 (D.N.J. Sept. 14, 2016); *Liebler v. City of Hoboken*, Civ. No. 15-8182 (KM) (MAH), 2016 WL 3965198, at *3 (D.N.J. July 21, 2016). The Court will decline to consider the video evidence. Moreover, reliance on the video would be even less appropriate here, given that the Complaint indicates that there were several witnesses to the events, as well as another video, and perhaps multiple videos, documenting the key confrontations. *See Velez v. Fuentes*, Civ. No. 15-6939 (MAS) (LHG), 2016 WL 4107689, at *8 (D.N.J. July 29, 2016) ("While the video of Plaintiff's arrest provides the Court with important insight into the events at issue, any assessment of the probative value of video

1

Plaintiff did not "enter[] into any restricted areas and made sure not to disturb any of the employees with unnecessary noise." (*Id.* ¶ 8). After about five minutes, an employee asked Plaintiff what he was filming, and he refused to provide information beyond answering that he was an "independent journalist" and was "gathering some content for a story." (*Id.* ¶¶ 9-11). Plaintiff then turned his camera on the woman and requested her name and title. When she declined to provide the information, he conveyed his belief that she was required to do so. (*Id.* ¶¶ 12-15).

Plaintiff then spent twenty more minutes video recording "the building, the literature, and other items of possible public interest . . . with no issue and without creating any disturbance." (*Id.* ¶ 15). He was eventually approached by two more employees and had similar encounters as with the first employee that had questioned him. In response to their questions about his activities, he provided no information beyond answers about being an independent journalist gathering content for a story. He video recorded them, demanded to know their names and titles, and refused to provide his identity. Plaintiff was advised that security had been called, and he went back to "record[ing] the public areas quietly." (*Id.* ¶¶ 16-17).

Plaintiff exited the building to leave, and one of the employees who had confronted him followed him out, video recording Plaintiff. (*Id.* ¶ 18). The employee again declined to give Plaintiff his name, so Plaintiff re-entered the building to inquire about the name of the employee. One of the employees who had previously questioned Plaintiff told him, "you have to answer my questions," but continued to decline to provide Plaintiff with her name. (*Id.* ¶ 21). An employee at the help desk informed Plaintiff that the first name of the employee recording him was "Robert,"

---

evidence must take into account that the camera, while an immutable witness, can only describe events from the particular perspective of the video's lens. . . . The video evidence is subject to all of the vagaries and limitations of the camera's perspective and commentators have cautioned courts to refrain from a reflexive reliance on equivocal video evidence when reaching ultimate legal conclusions.") (quotations omitted and cleaned up).

and the employees then laughed at Plaintiff. (*Id.* ¶ 20). Plaintiff was then advised that the police had been called because "recording public employees in the course of their duties in a public facility is 'illegal.'" (*Id.* ¶ 21). Plaintiff left the building to wait for the police to arrive.

Plaintiff's allegations against Defendant Partyka are as follows:

> Defendant Partyka arrived and made contact with Plaintiff, approaching aggressively and getting very close to Plaintiff. Defendant Partyka asserted that Plaintiff was asked to leave, despite the fact that Plaintiff had not once been asked to leave the property. Defendant asserted that the property was public and Plaintiff agreed, stating that they could not force Plaintiff to leave without a reason.
>
> Defendant Partyka then asked for an ID. Plaintiff stated "I don't have ID" and Partyka parroted "'you don't have ID" then immediately grabbed Plaintiff who evaded.
>
> Defendant Partyka began to aggressively pursue Plaintiff saying "you're under arrest."
>
> Plaintiff asked "Under arrest for what?"
>
> Defendant Partyka responded "I just asked you for your identification." Plaintiff asked "what law have I broken" while retreating in fear for Plaintiff's life. Plaintiff requested a supervisor and Defendant said "go ahead and call" while still aggressively purs[uing] Plaintiff.
>
> Defendant Partyka then reached for his taser and again demanded identification.
>
> Plaintiff agreed to vacate the premises but Defendant Partyka maintained pursuit stating he needed identification and threatening arrest.
>
> Plaintiff stated on numerous occasions "I have not broken any laws." Defendant Partyka responded "you're videotaping people" to which Plaintiff said "that's not illegal." Defendant Partyka responded "it is illegal." Defendant Partyka continued to attempt to force Identification, pursuing Plaintiff with hostility until Plaintiff approached Trooper Evans who had Defendant Partyka stand down.

(*Id.* ¶¶ 23-31).

3

Non-defendant Trooper Evans then de-escalated the situation.  Trooper Evans advised Plaintiff that the police were called for somebody suspicious, and Plaintiff countered that "suspicion isn't illegal."  (*Id.* ¶ 33).  Plaintiff refused Trooper Evans' request for identification, and Evans told him he was detained.  After Plaintiff advised Evans that it was an unlawful detention, he was allowed to leave.

Plaintiff brings seven claims: two First Amendment claims for retaliation, Fourth Amendment claims for unlawful seizure and assault, false imprisonment, and retaliation, and state law claims for tortious breach of contract and intentional infliction of emotional distress.[2]  For relief, he requests injunctive relief mandating various trainings for Delaware state employees, some of the trainings to be paid for by Defendant Partyka personally; $53,000 in damages from Defendant Partyka; and $40,000 in damages from Delaware.

Defendants have moved to dismiss the Complaint for failure to state a claim and based on Delaware and Defendant Partyka's entitlement to sovereign immunity and qualified immunity, respectively.  (D.I. 12).  The motion is fully briefed.  (D.I. 16, 17).

## II.     LEGAL STANDARDS

Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  When presented with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), district courts conduct a two-part analysis.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions."  *Id.* at 210-11.  Second, the Court determines

---

[2]     Claims One through Six are numbered as such.  Claim Seven, for intentional infliction of emotional distress, appears to be mistakenly labeled as Claim Ten.

4

"whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Fowler*, 578 F.3d at 210. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

### III. DISCUSSION

#### A. Sovereign Immunity

"Absent a state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978) (per curiam)).

5

The State of Delaware has not waived its sovereign immunity under the Eleventh Amendment. *See Jones v. Attorney Gen. of Delaware*, 737 F. App'x 642, 643 (3d Cir. 2018) (per curiam). Accordingly, the claims against Delaware must be dismissed.

Similarly, damages are unavailable under § 1983 when state officials are sued in their official capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). This is the case because § 1983 permits suits only against "persons," *id.*, and "state officials acting in their official capacities are not 'persons' under § 1983." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697 (3d Cir. 1996). Accordingly, the claims for damages against Defendant Partyka in his official capacity will be dismissed.[3]

### B.    First Amendment Retaliation

Plaintiff brings two First Amendment retaliation claims, one against non-defendant employees working in the Thurman Adams State Service Center and one against Defendant Partyka. To demonstrate retaliation, Plaintiff must show: (1) he engaged in constitutionally-protected activity; (2) the government responded with retaliation; and (3) the protected activity caused the retaliation. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

Plaintiff asserts that video recording inside the Thurman Adams State Service Center is protected under the First Amendment. To begin, the Court takes judicial notice that Thurman Adams State Service Center houses various Delaware state government agencies providing such programs and services as an emergency shelter for Emergency Assistance Services clients, a Needy Family Fund, a Family Visitation Center, a Food Closet, a Foster Grandparent Program, a

---

[3]    Although a suit seeking prospective injunctive relief can be brought against an official in his or her official capacity, *see Merritts v. Richards*, 62 F.4th 764, 771-73 (3d Cir. 2023), Plaintiff has not brought a claim for prospective injunctive relief against Defendant Partyka.

Kinship Care Program, a Children's Community Alternative Disability Program, a Food Benefit Program, Long Term Care, Medicaid, Temporary Assistance for Needy Families, a Child Health Clinic, Immunizations, Lead Testing, a dental clinic for children, Family Planning, Pregnancy testing, a Sexually Transmitted Disease clinic, HIV/AIDS Case Management, HIV counseling and testing, the Division of Substance Abuse and Mental Health, the Division of Medicaid and Medical Assistance, the Division of Family Services, the Division of Rehabilitative Services, the Division of Child Mental Health, and the Division of Prevention and Behavioral Health Services.  *See* https://dhss.delaware.gov/dhss/main/maps/dsscmap/gtown.htm (last visited Aug. 24, 2023).

The Third Circuit has held that "under the First Amendment's right of access to information the public has the commensurate right to record – photograph, film, or audio record – police officers conducting official police activity in public areas."  *Fields v. City of Philadelphia*, 862 F.3d 353, 360 (3d Cir. 2017).  In so holding, however, the Third Circuit noted:

> We do not say that all recording is protected or desirable.  The right to record police is not absolute.  "[I]t is subject to reasonable time, place, and manner restrictions." *Kelly [v. Borough of Carlisle]*, 622 F.3d [248,] 262 [(3d Cir. 2010)]; *see Whiteland Woods, L.P. v. Twp. of W. Whiteland*, 193 F.3d 177, 183 (3d Cir. 1999). But in public places these restrictions are restrained.
>
> \*   \*   \*
>
> If a person's recording interferes with police activity, that activity might not be protected. For instance, recording a police conversation with a confidential informant may interfere with an investigation and put a life at stake.

*Id.*

In Claim One, Plaintiff alleges that non-defendant state employees retaliated against him for exercising his First Amendment right to video record in public by harassing him and calling the police.  This claim is not directed at either Defendant in the case and therefore will be

7

dismissed.  Furthermore, the Court concludes that amendment is futile.  Whatever right Plaintiff has to video record in the Thurman Adams State Service Center is not unlimited.  *See Fields*, 862 F.3d at 360.  Many of services and programs listed above are of a sensitive, personal, and private nature.  The mere fact that an individual accesses such services or programs in a state funded building does by default mean they must subject themselves to potentially being videotaped by another citizen.  Based on his allegations, Plaintiff refused to provide anything beyond generic answers to employees' basic questions of who he was and why he was video recording, and he became confrontational when his lack of forthrightness led to the predictable result that the employees grew suspicious, asked more questions, and eventually called the police.  It is hard to imagine this scenario playing out differently, given Plaintiff's conduct, as alleged.  It is clear from Plaintiff's allegations that the police were not called in retaliation for Plaintiff exercising his First Amendment rights; rather, they were called based on Plaintiff's suspicious behavior, which, according to Plaintiff's allegations, had been ongoing for approximately twenty-five minutes by that point.  (*See* D.I. 2 ¶ 33) ("Evans stated that they were called for somebody suspicious.").

Claim Two alleges that Defendant Partyka retaliated against Plaintiff for exercising his First Amendment right to video record in public by "aggressively attack[ing] and assault[ing]" him and attempting to arrest him while manufacturing a crime by stating that such video recording is illegal.

Defendant Partyka argues that Plaintiff failed to state a First Amendment retaliation claim because he failed to allege a retaliatory act or a causal link between the alleged retaliatory act and his video recording.  Partyka also asserts that he is entitled to qualified immunity because, even assuming that the Court were to conclude that he had violated Plaintiff's First Amendment right to be free from retaliation, the right was not clearly established in this context.  "The doctrine of

qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021) (internal quotation marks omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)) (per curiam). The qualified immunity assessment involves two factors: (1) whether the plaintiff sufficiently alleged a right was violated, and (2) whether that right was clearly established when it was violated to the extent "that it would have been clear to a reasonable person that his conduct was unlawful." *Williams v. Sec'y Pennsylvania Dep't of Corrs.*, 848 F.3d 549, 557 (3d Cir. 2017). The Third Circuit has emphasized the importance of "defin[ing] the right 'at the appropriate level of specificity,'" because "only then can we determine whether the violative nature of the [officials'] particular conduct is clearly established." *Clark v. Coupe*, 55 F.4th 167, 181 (3d Cir. 2022) (quoting *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012), and *Mullenix*, 577 U.S. at 12) (second alteration in original).

Plaintiff asserted to Trooper Evans that suspicion is not illegal. This is correct. Plaintiff is incorrect, however, to the extent that he believes he has a clearly established right protecting him from a police officer ordering him to leave a public building after the officer was advised by employees that he had been behaving suspiciously for approximately half an hour. (*See* D.I. 2 ¶ 33) ("Evans stated that they were called for somebody suspicious."). Despite Plaintiff's attempts to frame this as a First Amendment retaliation claim, the facts alleged do not support such a claim. Furthermore, even assuming, *arguendo*, that Plaintiff had stated a First Amendment claim against Defendant Partyka, qualified immunity would protect Partyka from suit because the asserted right – apparently the right to be immunized from police questioning after acting suspiciously in a public

building for a half an hour while video recording – has not been clearly established. *See Clark*, 55 F.4th at 181.[4]

### C. Fourth Amendment Claims

In Claim Three Plaintiff asserts claims for unlawful seizure and assault under the Fourth Amendment. The Fourth Amendment protects individuals from unreasonable searches and seizures by the government. U.S. Const. amend. IV; *Maryland v. King*, 569 U.S. 435, 447 (2013). "[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous," the officer may make "reasonable inquiries" to investigate the behavior. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). The reasonable suspicion determination is based on the totality of the circumstances and requires that the officer "articulate something more than an 'inchoate and unparticularized suspicion or 'hunch.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 27). "The test is one of reasonableness given the totality of the circumstances, which can include [the suspect's] location, a history of crime in the area, [the suspect's] nervous behavior and evasiveness, and [the officer's] 'commonsense judgments and inferences about human behavior.'" *Johnson v. Campbell*, 332 F.3d 199, 206 (3d Cir. 2003) (quoting *Illinois v. Wardlaw*, 528 U.S. 119, 124-25 (2000)). Where a "trustworthy second hand report . . . includes facts that give rise to particularized suspicion," officers may rely on the report and need not base an investigatory stop on their own personal observation. *See id.* (citing *Adams v. Williams*, 407 U.S. 143, 147 (1972)).

---

[4] Notably, Plaintiff does not allege that Defendant Partyka retaliated against him for videotaping Defendant Partyka, a right which, as noted, has been clearly established. *See Fields*, 862 F.3d at 360.

10

It is debatable based on Plaintiff's allegations precisely when the seizure began. Plaintiff certainly was not seized at the beginning of his exchange with Defendant Partyka, given Plaintiff's allegation that he "exited the building and waited for the State police to arrive," (D.I. 2 ¶ 22), or when Defendant Partyka told Plaintiff that he had been asked to leave, and Plaintiff apparently still refused to leave, insisting that he could not be forced to leave. These allegations indicate the opposite of a seizure. When Defendant Partyka grabbed, or tried to grab, Plaintiff, and when Partyka told him he was under arrest, are the most likely starting points for the beginning of the seizure, which was likely still occurring when "Plaintiff agreed to vacate the premises but Defendant Partyka maintained pursuit stating he needed identification and threatening arrest." (*Id.* ¶ 29).

In any event, whenever Defendant Partyka's brief seizure of Plaintiff began, it was not unreasonable under the Fourth Amendment. As noted above, Plaintiff's allegations indicate that his suspicious behavior inside the Thurman Adams State Service Center had been reported by employees to the police, which would have been enough in and of itself to justify a brief stop. Plaintiff's allegations clearly indicate that he could have ended the encounter before it began by leaving rather than choosing to wait and engage with the police, and that his response to the initial encounter was to refuse to leave the premises. These actions, combined with the reports of his suspicious behavior inside a government building were enough for Defendant Partyka to form the requisite reasonable suspicion for the brief seizure.

Furthermore, Section 1902 of Title 11 of the Delaware Code, titled "Questioning and detaining suspects," provides:

> (a) A peace officer may stop any person abroad, or in a public place, who the officer has reasonable ground to suspect is committing, has committed or is about to commit a crime, and may demand the person's name, address, business abroad and destination.

11

> (b) Any person so questioned who fails to give identification or explain the person's actions to the satisfaction of the officer may be detained and further questioned and investigated.
>
> (c) The total period of detention provided for by this section shall not exceed 2 hours. The detention is not an arrest and shall not be recorded as an arrest in any official record. At the end of the detention the person so detained shall be released or be arrested and charged with a crime.

11 Del. C. § 1902. Given Plaintiff's allegations outlined above, Defendant Partyka was justified under Delaware law in demanding Plaintiff's identification and attempting to detain him when he refused to comply. The unreasonable seizure component of Claim Three will therefore be dismissed, and amendment is futile.

Turning to the assault portion of Claim Three, because assault is a state-law claim, the Court will liberally construe it as an excessive-force claim. A claim that law enforcement officers used excessive force "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen" is analyzed under the Fourth Amendment "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396. This analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* Other relevant factors include "the duration of the [officer's] action, whether the action takes place in the context of effectuating an arrest, the possibility that the suspect may be armed, and the number of persons

with whom the police officers must contend at one time." *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006) (alteration original).

Plaintiff alleges, at most, that Defendant Partyka momentarily grabbed him. Even that much is unclear though, because his actual allegation states that Partyka "immediately grabbed Plaintiff who evaded." (D.I. 2 ¶ 24). Liberally construing the allegation, the Court assumes that Partyka successfully grabbed Plaintiff at least temporarily before Plaintiff's evasive maneuvering. The allegation still falls well short of excessive force under the Fourth Amendment. *See e.g.*, *Bressi v. Brennan*, 823 F. App'x 116, 118, 119 (3d Cir. 2020) (per curiam) (holding that an allegation that an arresting officer "grabbed [the plaintiff] by the neck and slammed him against a concrete wall 'for no reason whatsoever,'" resulting in no injury to the plaintiff, "may have been improper, but . . . did not rise to the level of a constitutional violation") (citing *Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002) (holding that "the solitary act of momentarily grabbing [a suspect's] elbow was not a seizure for Fourth Amendment purposes," let alone excessive force)). The excessive-force component of Claim Three will also be dismissed, and amendment is futile.

Claim Four asserts false imprisonment. A claim for false imprisonment arises when a person is arrested without probable cause and is subsequently detained pursuant to that unlawful arrest. *See Adams v. Selhorst*, 449 F. App'x 198, 201 (3d Cir. 2011) (per curiam) (citing *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)). The Court will also liberally construe the Complaint as asserting false arrest. "To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citing *Groman*, 47 F.3d at 634, and *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)). Plaintiff was never actually placed under arrest or imprisoned, despite Defendant's Partyka's

13

statements that he was under arreste. As discussed above, his brief seizure was reasonable based on his alleged conduct and Delaware law. Accordingly, Plaintiff has failed to state a claim for false arrest or false imprisonment. Claim Four will be dismissed and amendment is futile.

Claim Five is a purported Fourth Amendment claim for retaliatory assault. Plaintiff alleges that Defendant Partyka assaulted him in retaliation for refusing to identify himself or provide his identification. The law does not appear to recognize a Fourth Amendment claim for retaliatory assault, and this claim is subsumed by Claim Three and Four for unlawful seizure, excessive force and false arrest which, as noted, are insufficiently pleaded.

### D.   State Law Claims

Given that all federal claims will be dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, including the assault claim in Claim Three. *See* 28 U.S.C. § 1367(c)(3); *Sarpolis v. Tereshko*, 625 F. App'x 594, 598-99 (3d Cir. 2016). Therefore, the state law claims will be dismissed, without prejudice, for lack of jurisdiction.

### IV.   CONCLUSION

For the above reasons, the Court will grant Defendants' motion to dismiss. An appropriate Order will be entered.